## Scott v. Hildebrand et al.

'(Decided May 25, 1937.)

MAURICE D. BURTON for appellant.

O. M. SMITH for appellees J. A. and L. B. Hildebrand.

MILLIKEN & MILLIKEN for appellee Hanes & Son.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellant, Virgil R. Scott, on July 26, 1930, conveyed to Amabel Price a lot in Bowling Green on which was located an apartment house known as the Scott Apartments. On August 6, 1930, Amabel Price executed and delivered to the Prudential Life Insurance Company of America a mortgage on the property to secure the payment of a $7,500 loan, and on August 8, 1930, she executed to Virgil R. Scott a mortgage for $2,932.67, which represented the balance of the purchase price. This mortgage was second and inferior to the mortgage to the Prudential Insurance Company on the lot and building, but was a first mortgage on the furniture in the apartment building. In October, 1930, Amabel Price sold the property to the appellee J. A. Hildebrand. She executed and delivered a deed to Hildebrand which was never recorded. Hildebrand exchanged the property with W. H. Fuller for a farm located in Christian county. Claiming that he had lost the deed which Mrs. Price had executed and delivered to him, Hildebrand requested Mrs. Price to execute a deed to Fuller, which she did on May 14, 1932. On the same day, Hildebrand and wife executed a quitclaim deed to Fuller. In the deed from Mrs. Price to Fuller, the latter assumed the mortgages on the property. Thereafter, the Prudential Life Insurance Company brought suit in the Warren circuit court to enforce its first mortgage lien. Virgil R. Scott also instituted a suit to enforce his second mortgage lien. Amabel Price, J. A. Hildebrand, and W. H. Fuller were named defendants. He sought a personal judgment against Hildebrand for any deficiency, having alleged in his petition

that Hildebrand had assumed the mortgage when he purchased the property from Mrs. Price. Hildebrand answered, denying that he assumed the mortgage indebtedness and alleging that the property was conveyed to him subject to the mortgage liens. The two actions were consolidated, and the property was ordered sold. After the payment of the insurance company's debt and the costs, the balance, amounting to about $50, was paid to appellant as a credit on his mortgage debt. About $1,100 had been paid on the debt before the suit was instituted, leaving a balance of $1,832.67 due, for which sum, subject to a credit of $50, the court entered judgment against Amabel Price and W. H. Fuller in favor of the plaintiff, Virgil R. Scott. The petition was dismissed as to Hildebrand, and Scott has appealed.

The sole question involved is one of fact. Did Hildebrand assume the mortgage to Scott when he purchased the property from Mrs. Price? There is no direct testimony that he did assume it. He testified positively that he purchased the property subject to the mortgages, and that it was understood that he was not to assume them and that the contract and deed so provided. Mrs. Price testified that he did assume the mortgage to the Prudential Insurance Company, but she was unable to say whether he assumed the mortgage to Scott. In her opinion, the furniture alone had sufficient value to guarantee the payment of the second mortgage, and she was only interested in securing protection from the first mortgage. Charles M. Moore and C. T. McCormick were the real estate agents representing Mrs. Price when the sale was made to Hildebrand. Letters written by them to appellant's attorney were treated as their depositions by agreement of the parties, but they failed to throw any light on the question except that C. T. McCormick, in his letter, made this statement:

"I recall one of the provisions of this deed was that Mr. Hildebrand bought this property from Mrs. Price subject to a lien of some insurance company, possibly the Prudential, and I am sure the deed was so prepared."

Appellant places much stress upon Hildebrand's apparent effort to divest himself of title to all of his real property a few months before this action was in-

stituted. When he exchanged the Bowling Green property for the Christian county farm, he had the farm conveyed to his daughter, and on July 18, 1932, a deed was recorded in the Logan county clerk's office which purported to have been executed by Hildebrand to his wife on December 18, 1930. By this deed he conveyed to her practically all of his real estate. These facts, coupled with the loss of the contract and the deed, create only a suspicion that Hildebrand assumed the mortgage on the property conveyed to him by Mrs. Price. The grantee of land which is subject to a mortgage assumes no personal liability for the obligation secured by the mortgage, unless by express agreement he undertakes to pay it. When one buys land subject to a mortgage upon it, he does not thereby assume any personal liability for the payment of the mortgage debt. Clay Fire & Marine Insurance Co. v. Hickman, 6 Ky. Law Rep. 308, 309, 12 Ky. Op. 738. After discussing Hildebrand's actions, which appellant insists were sufficient to show that he had assumed the mortgage, the chancellor, in his opinion, succinctly stated his conclusions as follows:

"But the difficulty confronting the court in holding that Hildebrand assumed these debts is there is no direct testimony that he did, and the plaintiff, Scott, fails to meet the burden of proof put upon him by the law to establish the contract of assumption by a clear preponderance of the evidence. 19 R. C. L., Mortgages, secs 150-153. The deed and contract Hildebrand claims to have lost, and the deed was never recorded. Mrs. Price's testimony is not clear nor convincing that Hildebrand assumed these debts, nor is Mr. Williams; yet there is evidence in the record indicating that Hildebrand has attempted to put his property beyond the reach of these debts in the event the court should hold he did assume them. There being no evidence that the deed from Mrs. Price to Hildebrand contained a covenant whereby he assumed these two mortgage debts, the court must hold the petition against Hildebrand should be dismissed."

We have examined the record carefully and are unable to say that the chancellor's finding is contrary to the preponderance of the evidence.

The judgment is affirmed.